## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHERYL CICCONE, individually and on behalf of all others similarly situated,** | : : : : | **CIVIL ACTION NO. 3:20-CV-981** |
| | : | **(Judge Conner)** |
| **Plaintiff** | : : | |
| **v.** | : : | |
| **PROGRESSIVE SPECIALTY INSURANCE COMPANY and PROGRESSIVE INSURANCE COMPANY,** | : : : : : | |
| **Defendants** | : : | |

### MEMORANDUM

Plaintiff Cheryl Ciccone moves to remand this action to the Pike County Court of Common Pleas.  Ciccone asserts that the court lacks diversity jurisdiction over both her individual claims under 28 U.S.C. § 1332(a) and her class-wide claims under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  Defendants Progressive Specialty Insurance Company and Progressive Insurance Company (collectively, "Progressive")[1] oppose Ciccone's motion.  We will deny Ciccone's motion to remand because Progressive has proven by a preponderance of the evidence that we have jurisdiction over her individual claims; we will defer ruling on CAFA jurisdiction.

---

[1] Whether Progressive Insurance Company is a cognizable entity and a proper party to this suit is the subject of a pending motion to dismiss.  (See Doc. 6). At the parties' request, we stayed the motion to dismiss pending resolution of the instant motion.

I.    **Factual Background & Procedural History**

On May 18, 2020, Ciccone filed a putative class-action complaint against Progressive in the Pike County Court of Common Pleas. Ciccone alleges violations of Section 1796 of Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 PA. CONS. STAT. § 1796, in Counts I and III; breach of contract in Count II; and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 PA. STAT. AND CONS. STAT. ANN. § 201-1 *et seq.*, in Count IV.

Ciccone carried auto insurance through Progressive, which provided her "medical benefit coverage" for injuries from a motor vehicle accident. (Doc. 2 ¶¶ 1, 15). Her policy allowed "up to $100,000 in first-party medical benefits coverage." (Doc. 1 ¶ 28). After a motor vehicle accident in November 2017, Ciccone received treatment for her injuries and sought coverage for that medical treatment under her insurance policy. (See Doc. 2 ¶¶ 16-17, 21).

Progressive ordered Ciccone to submit to a "medical benefits" exam in September 2018 and denied medical-benefits coverage when Ciccone refused to attend. (Id. ¶¶ 19-21; Doc. 1 ¶ 3; Doc. 18-4 at 1). This back-and-forth is borne out by a series of explanation-of-benefit documents ("EOBs") from Progressive, wherein Progressive uses "Code 6663" to deny benefits based upon Ciccone's failure to cooperate. (Doc. 18 at 1; Doc. 21 at 1-3; Doc. 23). The EOBs each contain the same stock language: "Explanation Code: 6663 -According to the policy a person seeking coverage must cooperate with us in any matter concerning a claim or lawsuit. As

the individual seeking coverage has not cooperated with our investigation, we must respectfully deny payment for this service."  (See Docs. 14, 17, 23; Doc. 18 at 1).

Ciccone avers that she and other Pennsylvania drivers insured by Progressive were wrongfully denied insurance benefits for refusing Progressive's demands for medical exams.  (See Doc. 2 ¶¶ 18-21, 33-41).[2]  Individually, Ciccone requests declaratory relief on Count I and compensatory damages of "$3,484.04 and other amounts which represent the sum of all medical bills the Defendants did not pay" on Counts II, III, and IV.  (Id. at 26-30).  On behalf of the putative class, the complaint seeks declaratory relief on Count I; "[a]n amount which represents the sum of all medical bills the Defendants did not pay as to each member of the class" on Counts II and III; and "the amount of actual damages sustained or the sum of $100, which[]ever is greater" on Count IV.  (Id.)  Both the individual claims and the putative-class claims also include requests for treble damages under the UTPCPL, attorneys' fees, statutory interest of 12 percent, expert fees, and costs.  (See id.)

Progressive timely removed the action pursuant to 28 U.S.C. § 1441, asserting federal diversity jurisdiction under 28 U.S.C. § 1332(a) and CAFA. (See Doc. 1).  Ciccone now moves to remand the case to state court for lack of

---

[2] Ciccone's cause of action is based on the Pennsylvania Supreme Court's recent decision in Sayles v. Allstate Insurance Company, 219 A.3d 1110 (Pa. 2019). The Sayles court opined that public policy voided "a contractual provision in a motor vehicle insurance policy that requires an insured to submit to an independent medical examination by a physician selected by the insurer . . . as a condition precedent to the payment of first-party medical benefits under that policy." Id. at 1116.  Such contractual provisions conflict with the MVFRL.  See id. at 1112; 75 PA. CONS. STAT. § 1796(a).

jurisdiction.  (See Doc. 8).  The motion has been fully briefed and is ripe for review.
(See Docs. 9, 15, 18, 21).

## II.    **Legal Standard**

Under 28 U.S.C. § 1441, a defendant may remove an action brought in state court to federal district court when the claims fall within the federal court's original jurisdiction.  See 28 U.S.C. § 1441(a).  A plaintiff may challenge removal for lack of jurisdiction by moving to remand the matter to state court.  See id. § 1447(c).  Such motions may be filed at any time before final judgment is entered.  Id.  If the district court indeed lacks subject matter jurisdiction, it must remand to the state court from which the action was removed.  Id.  As the party asserting jurisdiction, defendants bear the burden of proving that the matter is properly before the federal court.  See Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007) (citations omitted); Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987) (same)).

## III.    **Discussion**

Ciccone asks us to remand this matter to state court for lack of subject matter jurisdiction both in her individual capacity and as lead plaintiff for a putative class. (See Doc. 8).  Ciccone argues that the amount in controversy is less than $75,000 for her individual claims and less than $5,000,000 for the class claims.

### A.    **Amount in Controversy for Ciccone's Individual Claims**

With respect to Ciccone's individual claims, Progressive invokes our diversity jurisdiction.  (Doc. 1 ¶¶ 14-41).  To establish diversity jurisdiction, Progressive must demonstrate that this matter is between citizens of different states and that the

amount in controversy, exclusive of interest and costs, exceeds $75,000.  <u>See</u> 28
U.S.C. § 1332(a).   The diversity requirement is satisfied: Ciccone is a Pennsylvania
resident, and Progressive is incorporated and has its principal place of business in
Ohio.  (Doc. 1 ¶¶ 15-22).  The only dispute is whether the complaint satisfies the
amount-in-controversy requirement.

An amount-in-controversy determination generally begins with the
complaint itself.  28 U.S.C. § 1446(c)(2); <u>see</u> <u>Horton v. Liberty Mut. Ins. Co.</u>, 367 U.S.
348, 353 (1961); <u>Angus v. Shiley Inc.</u>, 989 F.2d 142, 145 (3d Cir. 1993).  Usually, the
amount demanded in the complaint is the amount in controversy.  <u>See</u> 28 U.S.C.
§1446(c)(2).  But when, as here, state-court practice "does not permit demand for a
specific sum or permits recovery in excess of the amount demanded," the court
looks to the amount in controversy claimed in the notice of removal.  <u>See</u> 28 U.S.C.
§ 1446(c)(2)(A)(ii); <u>see also</u> PA. R. CIV. P. 1021(b).  The amount claimed by the
defendant "should be accepted when not contested by the plaintiff or questioned by
the court."  <u>Dart Cherokee</u>, 574 U.S. 81, 87 (2014); <u>see also</u> 28 U.S.C. § 1446(c)(2)(B).
If the amount claimed in the notice of removal is contested, "both sides submit
proof and the court decides, by a preponderance of the evidence, whether the
amount-in-controversy requirement has been satisfied."  <u>Dart Cherokee</u>, 574 U.S. at
88.

For an open-ended claim like Ciccone's,[3] we must measure the amount in controversy "not . . . by the low end of [the] claim, but rather by a reasonable reading of the value of the rights being litigated." Werwinski v. Ford Motor Co., 286 F.3d 661, 666 (3d Cir. 2002) (first alteration in original) (quoting Angus, 989 F.2d at 146). We determine the amount in controversy claimed in the plaintiff's complaint as of "the time the petition for removal was filed." Id.; see Albright v. R.J. Reynolds Tobacco Co., 531 F.2d 132, 135 (3d Cir. 1976) (internal citations and quotation omitted). We may not consider "events occurring subsequent to removal which reduce the amount recoverable," Albright, 531 F.2d at 135 (quoting St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 293 (1938)), but may consider post-removal assertions of actual damages relating to the amount in controversy at the time the case was removed, see Angus, 989 F.2d at 145 n.3; Meritcare Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 222-23 (3d Cir. 1999), abrogated on other grounds by Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005).

Ciccone's complaint includes four counts: violations of Section 1796 of Pennsylvania's MVFRL, 75 PA. CONS. STAT. § 1796 (Counts I and III), breach of

---

[3] Ciccone disputes that the claim is open-ended. (See Doc. 9 at 6-8; Doc. 18 at 3-7). We are not persuaded. The complaint seeks relief for "$3,484.04 *and other amounts* that represent the sum of all medical bills" Progressive did not pay because Ciccone failed to attend a medical exam. (See Doc. 2 at 28, 29, 30) (emphasis added). We acknowledge that the Pennsylvania Rules of Civil Procedure forbid Ciccone from requesting a sum certain. See PA. R. CIV. P. 1021(b). But Ciccone made no other attempt to limit her damages, which plaintiffs may do to avoid federal jurisdiction. See, e.g., Morgan v. Gay, 471 F.3d 469, 474 (3d Cir. 2006) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 294 (1938)). For example, Ciccone made no "express limitation" in her complaint, cf. id. at 476, nor did she otherwise intimate that her damages were limited, (see generally Doc. 2).

contract (Count II), and violations of Pennsylvania's UTPCPL, 73 PA. STAT. AND CONS. STAT. ANN. § 201-1 *et seq.* (Count IV).  (See Doc. 2 at 17-26).  In addition to declaratory relief, Ciccone requests compensatory damages of "$3,484.04 and other amounts which represent the sum of all medical bills" Progressive did not pay when she refused to attend a medical exam, treble damages, statutory interest of 12 percent, and attorneys' fees and costs.  (Id. at 26-30).

The parties proceed on the reasonable assumption that Ciccone's claims would permit treble damages and attorney's fees, and that such amounts would be included in the amount in controversy.  (See Doc. 1 ¶¶ 31-37; Doc. 9 at 3-4).  We agree.  The UTPCPL empowers the court with discretion to award a successful plaintiff "up to three times the actual damages sustained." 73 PA. STAT. AND CONS. STAT. ANN. § 201-9.2(a).  The UTPCPL further authorizes recovery of attorneys' fees.  Id.  Our calculation of the amount in controversy will thus focus on Ciccone's claims for compensatory and treble damages as well as attorney's fees.[4]

The parties have submitted competing arguments and evidence on the question of compensatory damages.  (Compare Docs. 1, 14, 15, 17, 21, 23 with Docs. 2, 9, 18).  For its part, Progressive relies on declarations from Melissa Wagoner, a supervisor in its claims department, which aver that she performed a review of

---

[4] Progressive argues that Ciccone's request for 12 percent statutory interest should be included in our amount-in-controversy calculation, notwithstanding Section 1332(a)'s clear instruction to make the calculation "exclusive of interest and costs."  See 28 U.S.C. § 1332(a); (see also Doc. 1 ¶¶ 38-41; Doc. 15 at 10).  Neither the Supreme Court nor our court of appeals has decided whether *statutory* interest differs from ordinary interest for purposes of Section 1332(a).  Because inclusion or exclusion of interest on Ciccone's individual claims is not determinative, we decline to address this novel question.

Ciccone's claim file.  (<u>See</u> Doc. 15-1 ¶ 5; Doc. 21-1 ¶¶ 5, 7).  Progressive also submitted several hundred pages of original and reconsidered EOBs for Ciccone. (<u>See</u> Docs. 14, 17, 23).  Based on the declarations and EOBs, Progressive makes two alternative arguments about Ciccone's complaint: it places either $143,635.82 in controversy because this represents Ciccone's "total amount of unpaid medical bills," (<u>see</u> Doc. 15 at 3, 7; Doc. 15-1 ¶ 7; Doc. 21 at 3), or it puts $32,633.65 in controversy "solely based on [Ciccone's] refusal to attend an independent medical examination," (<u>see</u> Doc. 1 ¶ 29; Doc. 15 at 1, 3; Doc. 15-1 ¶ 8).  Progressive reaches these alternative amounts before treble damages and attorneys' fees.

Ciccone responds with a declaration by her attorney and over 30 pages of EOBs denying benefits, as well as a December 2018 letter in which Progressive asks Ciccone for her "cooperation with attending the independent medical exam."  (<u>See</u> Doc. 18 at 1-7; Doc. 18-2; Doc. 18-3; Doc. 18-4).  On this basis, Ciccone argues that her complaint places in controversy "the exact amount of $3,484.04" before treble damages and attorneys' fees.  (<u>See</u> Doc. 18 at 3).

We find that a preponderance of the evidence supports an amount in controversy above the minimum jurisdictional threshold.  As a preliminary matter, we do not accept either of the extreme figures proffered by the parties. Progressive's claim that Ciccone's complaint puts as much as $143,635.82 in controversy includes "the sum of all medical bills Progressive did not pay," without regard whether the claims are within the scope of Ciccone's instant suit.  (<u>See</u> Doc. 15 at 6).  But our court of appeals has instructed that amounts in controversy "must be realistic" and may not be "based on fanciful, 'pie-in-the-sky,' or simply wishful

amounts." See Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 403 (3d Cir. 2004).  Throughout the complaint, Ciccone requests damages for Progressive's denial of benefits as a direct result of Ciccone's *failure to attend a medical exam.* (See Doc. 2 ¶¶ 5-7, 21, 29, 32, 36, 51(c)-(d), 61(g), 70, 75; Doc. 18 at 4-6).  Additionally, Ciccone's policy covered a maximum of $100,000 in first-party medical benefits. (See Doc. 1 ¶ 28).  Progressive does not explain how Ciccone's damages could outpace the limits of her policy by over $40,000.  We therefore reject Progressive's argument that Ciccone has pled $143,635.82 as a "wishful" amount, see Samuel-Bassett, 357 F.3d at 403, and as a willful misreading of Ciccone's complaint, (see Doc. 18 at 8-9).

Ciccone's proposed figure of $3,484.04 fares no better.  Her state-court complaint asks for "$3,484.04 and other amounts," but the EOBs submitted by Ciccone do not total $3,484.04.  (Cf. Doc. 18-3).  As Progressive correctly points out, Ciccone's submitted EOBs total $2,735 in denied benefits.  (See Doc. 21 at 2).  Ciccone does not explain the discrepancy between her submitted EOBs and her claimed total.  Furthermore, Ciccone avers that her complaint is based on Progressive's use of Code 6663 to deny her benefits.  (See Doc. 18 at 1).  But the total of denied insurance benefits in the EOBs submitted by Progressive, denials due to Code 6663, far exceed Ciccone's claimed damages.  (See Docs. 14, 17, 23; Doc. 15 at 7-8; Doc. 21 at 1-2).

Based on the court's independent review of both the original and reconsidered EOBs, Progressive denied Ciccone $32,633.65 in benefits from May 2018 through August 2019, but would have paid those benefits if Code 6663 did not

exist.  (See Doc. 18 at 1; Doc. 18-4 at 1; Doc. 21 at 1).  Thus, Progressive has

submitted competent evidence that, but for Code 6663, Ciccone would have been

paid over $32,600 in benefits under her policy.  Ciccone fails to explain or rebut the

original EOBs that Progressive submitted.  Ciccone also fails to adequately explain

why those EOBs should not count toward the amount in controversy.  Ciccone

makes much of Progressive's first submission of EOBs because that submission

contains only "revised" or "reconsidered" EOBs with no mention of Code 6663.

(See Doc. 18 at 2).  Progressive cured this deficiency by submitting the original

EOBs sent to Ciccone; these EOBs contain Code 6663.  (See Doc. 23).  Thus, we are

left to guess why Ciccone did not include copies of these EOBs with her complaint.

   With a treble-damages estimate of three times the compensatory award,

Ciccone's total individual damages would reach nearly $98,000.  Because attorneys'

fees are available by statute, Ciccone's individual award could top $125,000,

exclusive of interest and costs, after adding a reasonable fee of approximately 30

percent.  See Frederico, 507 F.3d at 199 (citing In re Rite Aid Corp. Sec. Litig., 396

F.3d 294, 303 (3d Cir. 2005) (noting the Federal Judicial Center's median figure of 27

to 30 percent fee recovery in class actions)).  We therefore find that Progressive has

carried its burden of showing by a preponderance of the evidence that Ciccone's

individual claims satisfy the amount-in-controversy requirement of 28 U.S.C. §

1332(a).

### B.  Amount in Controversy Under CAFA

   For Ciccone's putative class claims, Progressive endeavors to invoke

jurisdiction under CAFA.  (See Doc. 1 ¶¶ 42-54).  To establish CAFA jurisdiction,

Progressive must demonstrate (1) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," (2) the proposed class contains at least 100 members, and (3) "any class member is a citizen of a state different from any defendant."  See 28 U.S.C. § 1332(d).  Individual class members' claims "shall be aggregated" to determine whether the amount in controversy exceeds the $5,000,000 threshold.  See 28 U.S.C. § 1332(d)(6).

Ciccone does not dispute that the proposed class contains at least 100 members; her complaint alleges "hundreds of members in the proposed [c]lass." (See Doc. 2 ¶ 48).  Progressive claims the class includes "at least 200 people."  (See Doc. 1 ¶ 47).  As with Ciccone's individual claim, CAFA's diversity requirement is satisfied: Ciccone brings the action as a Pennsylvania resident and on behalf of other Pennsylvania drivers insured by Progressive, and Progressive is incorporated and has its principal place of business in Ohio.  (See Doc. 1 ¶¶ 15-22; Doc. 2 ¶¶ 47, 51).  Again, the only disputed element is the amount in controversy.  Because the amount claimed in the notice of removal is contested, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  Dart Cherokee, 574 U.S. at 88.

As with Ciccone's individual claim, the parties vigorously dispute whether the threshold has been reached for CAFA jurisdiction.  Progressive argues that because Ciccone would have been paid out $32,633.65 if Code 6663 did not exist, this dollar amount is the accurate base from which to calculate class damages.  (See Doc. 1 ¶¶ 48-54; Doc. 15 at 13-15).  Multiplying $32,633.65 by a class size of at least 200, Progressive concludes that $6,526,730 is in controversy before treble damages

and attorneys' fees are calculated.  (See Doc. 1 ¶ 52; Doc. 15 at 14, 15).  Ciccone

counters that because her individual claim is only for "$3,484.04," trebling leads to

damages of $10,452.12; multiplied by 200, the class recovery is only $2,090,424 before

attorneys' fees.  (See Doc. 15 at 18 n. 2).  Adding attorneys' fees of approximately 30

percent brings Ciccone's total to $2,717,551.20 exclusive of interests and costs.  See

In re Rite Aid Corp. Sec. Litig., 396 F.3d at 303.  Ciccone further argues that the

"amount of [her individual] damages need not be typical of the class."  (See Doc. 18

at 17; Doc. 9 at 16-18).

Progressive cites our court of appeals' decisions in Judon v. Travelers

Property Casualty Co., 773 F.3d 495 (3d Cir. 2014) and Frederico v. Home Depot, 507

F.3d 188 (3d Cir. 2007), urging this court to use Ciccone's damages as a class-wide

baseline. Progressive argues that it is "not unreasonable to assume that [Ciccone],

as the proposed class representative, has damages that are typical of the class."  See

Judon, 773 F.3d at 507 (citing Frederico, 507 F.3d at 197).  We disagree.  Judon and

Frederico simply do not stand for the propositions that Progressive asserts.   Judon

considered whether an insurer who removed a class action to federal court had

proven CAFA jurisdiction.  Judon, 773 F.3d at 506.  Holding that the insurer had not

met its burden, the court stated that it is "not unreasonable to assume" the named

plaintiff had damages typical of the class.  Id. at 507.  That statement, however,

cannot be divorced from its context: the plaintiff's originally claimed individual

damages totaled $2,636.40, and the court rejected the insurer's use of $8,500 or

$20,000 for the CAFA calculation because the insurer had not provided "any proof

to a reasonable probability" for the damages of other individual class members.  Id.

at 508.  Much like the <u>Judon</u> court, we have no information regarding the putative

class members other than an estimated size of at least 200.  <u>Id.</u> at 507.

Nor does <u>Frederico</u> support Progressive's damages calculation.  In <u>Frederico</u>,

plaintiff personally claimed compensatory and punitive damages of $1,722.84.

<u>Frederico</u>, 507 F.3d at 198-99.  The defendant used this undisputed amount as a

baseline for its CAFA calculation.  <u>Id.</u> at 197; <u>see also</u> <u>Judon</u>, 773 F.3d at 502.  The

court of appeals accepted the defendant's reliance on this amount because it was

"based on allegations made initially by [the plaintiff] herself."  <u>See</u> <u>Frederico</u>, 507

F.3d at 198.  Progressive's calculation of $32,633.65 in damages, *per contra*, cannot

be calculated from the figures in Ciccone's complaint.  Had Progressive used

Ciccone's originally stated damages of $3,484.04 in its CAFA calculations, the class

damages would fall far short of the jurisdictional threshold.

<u>Judon</u> and <u>Frederico</u> underscore that the *allegata* and the record control our

analysis.  The pleadings in the instant matter quite clearly do not establish the

$5,000,000 jurisdictional threshold: Ciccone's demand for the class seeks "either the

amount of actual damages sustained or the sum of $100, which[]ever is greater."

(<u>See</u> Doc. 2 at 30).  Progressive submitted over 80 EOBs, two separate declarations,

and three briefs just to establish Ciccone's *potential* individual damages.

Progressive has not submitted any information on damages of additional class

members, and "we are left with no evidence of what a reasonable claim against

[Progressive] might be."  <u>Judon</u>, 773 F.3d at 507; <u>cf.</u> <u>Excel Pharm. Servs., LLC v.</u>

<u>Liberty Mut. Ins. Co.</u>, 825 F. App'x 65, 68 (3d Cir. 2020) (nonprecedential) (ruling

that defendant had proven CAFA jurisdiction by submitting evidence of at least $3,000,000 in controversy among 28 members of a 2,000-member class).

As set forth above, we lack sufficient information from Progressive to find by a preponderance of the evidence that the amount in controversy exceeds the minimum jurisdictional threshold of $5,000,000.  Progressive, like the insurer in Judon, "is drawing *inferences* from the limited papers the parties have submitted" in this case for its CAFA calculation.  See Judon, 773 F.3d at 507.  In its first declaration, Progressive states that "[i]t cannot be determined with certainty… [that any given claimant] was denied any first-party benefits solely because of a non-appearance at any given scheduled [medical exam]."  (See Doc. 15-1 ¶ 11).  Yet Progressive contends that that it is reasonable to assume that each of these claimants could recover over $32,000 individually and over $96,000 with treble damages.  We cannot agree.  Ciccone was insured for up to $100,000 (and a recovery of $32,633.65 is therefore not unreasonable), but other class members may hold smaller policies, which would seriously limit their damages.  (See Doc. 18 at 21).  Similarly, the average amount in controversy could vary dramatically among 200 plus class members and, beyond pure speculation, we have no way of estimating the total amount in controversy in relation to CAFA's jurisdictional threshold.

We require additional jurisdictional facts to make a determination on putative class damages, and we presently lack evidence from Progressive on this issue.  Although Progressive has not presently proven that jurisdiction is proper under CAFA, we will defer a final ruling on this issue and will allow a brief period of time for jurisdictional discovery.

**IV.**   **Conclusion**

For the reasons set forth herein, we will deny Ciccone's motion to remand because we have subject matter jurisdiction over her individual claim.  We will defer ruling on the motion as to the CAFA amount in controversy pending a period of jurisdictional discovery.  An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     December 11, 2020